# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARY SALCIDO

       Plaintiff,

vs.                                           Civil No. 00-1234 MV/WWD

LARRY G. MASSANARI,
ACTING COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed January 18, 2001 **(Doc. 8)**.[1]  Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for social security disability insurance benefits ("DIB") and supplemental security benefits ("SSI").  Plaintiff is currently 42 years old and alleges a disability due to a motor vehicle accident which occurred in May 1990.  The accident resulted in injuries to her back, neck, shoulders, arms and legs.  Plaintiff last worked in July 1990.

    2. After a first administrative hearing on her application, Plaintiff appealed the denial of her application for benefits.  In August 1997, the case was remanded to the Commissioner by the U.S. District Court for reevaluation of the ALJ's findings with regard to Ms. Salcido's credibility

---

[1] The motion package was actually filed with the Court on May 16, 2001, although the motion was served on January 18, 2001.

and residual functional capacity. Tr. at 224-243. A remand hearing was held on March 10, 1999, which again resulted in an unfavorable decision on March 25, 1999. Tr. at 201-213.

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred in evaluating the treating physician's opinion; (2) the ALJ erred in his assessment of Plaintiff's credibility; (3) the ALJ's finding regarding Plaintiff's residual functional capacity was in error; (4) the ALJ erred in finding Plaintiff is capable of returning to past relevant work; and (5) the ALJ erred in finding that Plaintiff is capable of the performance of substantial gainful activity.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. § 404.1520(a - f). The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the

ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7.  The Medical-Vocational Guidelines ("grids") are used at step five to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various residual functional capacity levels ("RFC") by incorporating administrative notice of occupational publications and studies.  20 C.F.R. §404.1566(d).

8.  The grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit his "ability to perform the full range of work in a particular RFC" category on a sustained basis.  Williams v. Bowen, 844 F.2d 748 (10th Cir. 1988) (citations omitted).  In cases where evidence is presented that the claimant cannot perform the full range of an exertional work level, a vocational expert should be consulted.  SSR 83-12.

9.  Ms. Salcido described her back pain to Dr. Janet Hamilton, a consulting physician, as a "burning pain like someone is punching me."  She stated that it usually radiates down her right leg, and causes swelling and tingling in that leg.  She also has pain which radiates from her back down the entire right upper extremity and that both her hands "swell and tingle."  Tr. at 140.

10.  At the initial hearing, Plaintiff told the ALJ that the pain had not responded to any treatment.  Tr. at 185.  She also stated that her ability to sit is limited to 15 minutes at a time, standing is limited to less than 15 minutes at a time, walking even short distances makes her tired and out of breath and that she has to lie down four out of every eight hours during the day.  Tr. at 188-89; 191.  Plaintiff told the ALJ that her hands swell to the point where she cannot bend her

fingers enough to hold a pen.  Tr. at 190.  She stated that she does no housework, and needs help with dressing.  At the time of the first hearing, Ms. Salcido lived with her two children who assisted with the household tasks, including cooking and cleaning.

**First and Third Alleged Errors**

11.  On remand, the Commissioner was directed to reevaluate two specific areas: Plaintiff's residual functional capacity ("RFC") with regard to her cervical condition and her credibility.  Tr. at 241-42.  My findings regarding Ms. Salcido's RFC, particularly alleged errors 1 and 3, have a determinative impact on the other issues raised by the Plaintiff.

12.  In his decision following remand, the ALJ addressed Plaintiff's cervical, lumbar and thoracic impairments and determined that Plaintiff could perform sustained work activity in a wide range of sedentary jobs.  Tr. at 210-11.  The ALJ also found that Ms. Salcido's complaints of pain did not reduce her RFC for sedentary work, based on the January 1999 medical report of Dr. Varnado, Plaintiff's treating physician.  Tr. at 210.  The ALJ concluded that Plaintiff could return to her past relevant work as a PBX or telephone operator and that, based on vocational expert testimony, she could perform other work in the national economy.  Tr. at 212-13.

13. The ALJ adopted the reports of both Dr. Varnado, Plaintiff's treating physician, and Dr. Powell, a DDS medical consultant.  In his decision, the ALJ referred to the specific findings in these reports.  Tr. at 205, 207.  Dr. Varnado had treated Plaintiff from 1991 to 1994.  He also completed a functional capacity assessment in 1999, the findings in which were expressly adopted by the ALJ.  This assessment indicated that Plaintiff could sit, stand and walk for a total of 4 hours in a typical work day, in 2 hour intervals.  The report also stated that Ms. Salcido could lift/carry up to 10 pounds occasionally and 5 pounds frequently.  Tr. at 300-03.

14. The ALJ also adopted the medical findings from Dr. Powell's functional capacity assessment completed in October 1993, stating that Plaintiff could sit, stand or walk for a total of 6 out of 8 hours.  Tr. at 37- 44.[2]  I note that the ALJ referred to the May 1998 report of Dr. Allen, although his findings on Plaintiff's functional limitations were not expressly adopted.[3]

15. I agree with Plaintiff that the ALJ erred in evaluating the opinion of Dr. Varnado, Plaintiff's treating physician.  Although the ALJ expressly adopted Dr. Varnado's findings, he misinterpreted these findings and made faulty conclusions based on these findings.

16. Despite the fact that Dr. Varnado's assessment stated that Plaintiff could sit for a total of only 4 hours, the ALJ represented these findings as supportive of Plaintiff's ability to do a wide range of sedentary work.  Tr. at 205, 210.  This characterization is legally erroneous and renders the decision internally inconsistent.

17. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday.  Sitting would generally total about 6 hours of an 8-hour workday.  SSR 96-9p.

18. The inconsistency in the ALJ's decision was further reflected in the hypothetical posed to the vocational expert ("VE") at the hearing, describing Plaintiff as able to sit "six out of

---

[2] On appeal, the district court found that the ALJ had correctly rejected the findings of Dr. Janet Hamilton regarding Plaintiff's limited ability to sit and stand, on the basis that these findings were based on observations and Plaintiff's stated symptoms, rather than any clinical or laboratory diagnostic technique.  Tr. at 236.

[3] Dr. Allen's assessment stated that Plaintiff's main problems were a limited range of motion and symptom magnification.  It also indicated that Plaintiff reported she could sit or stand for only 20 minutes, walk for 2 blocks, and carry no more than one gallon of milk.  Tr. at 288-89.

eight hours[,"] Tr. at 337, which represents an ability to do a full range of sedentary work.[4]

19.   The Commissioner concedes that the record does not support a finding that the Plaintiff has a work capacity for unmodified sedentary work and requests remand so that the ALJ can obtain vocational testimony on the availability of other work in the national economy.  Resp. at 4.

20.  "A finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of  'disabled.'  If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience."  SSR 96-9p ("Purpose").  For this reason, the case should be remanded to the Commissioner for further vocational testimony rather than reversed with an award of benefits, as Plaintiff urges.

21.   Although it is  clear that evidence in the record supports a finding that Plaintiff has the ability to perform less than the full range of sedentary work, it has not yet been determined whether her sitting limitations (4 hours total out of an 8-hour day) completely erodes the occupational base, or whether there are some jobs she can perform, since the "six out of eight hours" is a general guideline and should be reviewed on a case-by-case basis.  SSR 96-9p.

22.   A VE is used in making an analysis of the impact of a claimant's RFC upon the full range of sedentary work, when determining the extent of the erosion of the occupational base, and ascertaining whether there are occupations an individual may be able to perform.  SSR 96-9p

---

[4]  Subsequent hypotheticals did not include additional functional restrictions, but rather addressed limitations regarding Plaintiff's need to rest her head and hands frequently.  Tr. at 338-41.

("Use of vocational resources").  While a claimant's inability to sit for a total of 6 hours in an 8-hour work day would generally erode the *unskilled* sedentary occupational base, Plaintiff's past work as a PBX operator is considered sedentary and semi-skilled.  Tr. at 212; see also SSR 96-9p ("Exertional Limitations and Restrictions": "If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the *unskilled* sedentary occupational base will be eroded") (emphasis added).

23.  Vocational testimony (based on hypotheticals accurately reflecting Plaintiff's functional limitations, of course) would also establish whether Plaintiff's inability to do sedentary work precludes her from an ability to perform a higher exertional level, as suggested by the SSR 96-9p:  "[fact that an] individual cannot do the sitting required to perform the full range of sedentary work does not necessarily mean that he or she cannot perform other work at a higher exertional level.  In unusual cases, some individuals will be able to stand and walk longer than they are able to sit.  If an individual is able to stand and walk for approximately 6 hours in an 8-hour workday (and meets the other requirements for light work), there may be a significant number of light jobs in the national economy that he or she can do even if there are not a significant number of sedentary jobs."

24.  Also, jobs that can accommodate a plaintiff's need to alternate positions can affect the occupational base.  In this case, it is not clear whether this accommodation would have an affect on Ms. Salcido's ability to perform sustained work activity.

**Second Alleged Error**

25.  Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility.

26.  Contrary to Plaintiff's position, I find that the ALJ's findings on this issue were not

7

conclusory. The ALJ framed his inquiry around the correct legal standard and factors that should be considered. While recognizing that Plaintiff had an impairment that could cause pain -- some limitation on range of motion and muscle spasm – the ALJ referred to evidence in the record on which to base his finding of noncredibility.

27. The ALJ noted Dr. Allen's finding of symptom magnification, and that Plaintiff's symptoms were aggravated on exertion above the functional limitations described by Dr. Varnado, her treating physician. Tr. at 209. He also noted her activities of daily activities and the inconsistencies between her symptoms and the objective medical evidence. Tr. at 209-10. Further, pursuant to the directive on remand, the ALJ did not rely on those factors which had been erroneously relied upon in order to discount Plaintiff's credibility. See Tr. at 237-39. Thus, I find no error on this issue.

**Fourth and Fifth Alleged Errors**

28. Plaintiff alleges that the ALJ erred in finding that she is capable of returning to past relevant work; and that she is capable of the performance of substantial gainful activity.

29. I need not make a determination on these issues because the ALJ's findings will necessarily be affected by his findings on remand following a vocational consult regarding functional restrictions which were not considered in the hypotheticals at the last hearing. Plaintiff's ability to perform any occupations at the sedentary work level will have ramifications for these issues.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **(Doc. 8)** be DENIED IN PART in that this matter be remanded to the Commissioner for proceedings

consistent with this opinion. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE